Arthur D. Murphy, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, White Haven Center, Respondent.

24

Argued April 5, 1984, before Judges WILLIAMS, JR., MACPHAIL and DOYLE, sitting as a panel of three.

*William R. Lee*, for petitioner.

*Thomas Blazusiak,* Assistant Counsel, with him, *James S. Marshall,* Assistant Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., August 30, 1984:

Arthur D. Murphy (Murphy) appeals from an order of the State Civil Service Commission (Commission) which affirmed an order of the Department of Public Welfare, White Haven Center (White Haven), suspending and then removing him from his position there. Murphy was removed as a result of his alleged attempt to secure a promotion by paying $500 to White Haven's Director.

The record before us presents the following factual scenario. For approximately sixteen years prior to his removal, Murphy was employed at White Haven as a Retardation Aide. During his years of employment, Murphy received only one promotion, from Mental Retardation Aide I to II. On September 10, 1981, Murphy met with a co-worker, Bernadette Yourren, off the grounds of the institution. There, Murphy gave Yourren $500 in currency in an envelope as well as a copy of a letter written on Murphy's behalf by a state representative. While together, Yourren wrote a note to accompany the $500 and the letter which was signed "Art."[1] Yourren then left to deliver the en-

---

[1] The note written by Yourren which accompanied the $500 in currency reads as follows:

> I appreciate and thank you for your consideration and interest in assisting me to forward myself in my field and in any other way you can guide me whereby I can improve myself.
>
> With kindest regards and respect—
>
> Art

P.S.

> This letter is enclosed only to show I have [state representative] endorsement and for no other purpose—I shall keep in touch.

velope containing the $500, the handwritten note and the letter to White Haven's director, Dr. David J. Koehn.[2] At the time, Murphy had an application pending for a number of promotion opportunities which then existed at White Haven. Upon receipt of the envelope and its contents, Dr. Koehn contacted the Attorney General's office and cooperated in the subsequent investigation.

White Haven suspended Murphy from his position at White Haven without pay, effective October 29, 1981, pursuant to Section 803 of the Civil Service Act.[3] On December 11, 1981, Murphy was removed from his position at White Haven pursuant to Section 807 of the Civil Service Act.[4] Murphy appealed his removal to the Civil Service Commission (Commission), which held a hearing on August 12, 1982. On February 3, 1983 the Commission entered its order dismissing Murphy's appeal and sustaining his suspension and removal by White Haven. Murphy then petitioned this Court for review.

In this appeal, Murphy contends that the Commission committed several errors of law, that it abused its discretion and that there was not substantial evidence to support the order. In the case of a regular civil service employee, as was Murphy, the appointing authority, White Haven, has the burden of proof to show just cause so as to justify removal. Section 807 of the Civil Service Act, 71 P.S. §741.807; *Hoffman v. Pennsylvania Department of Health,* 73 Pa. Commonwealth Ct. 284, 458 A.2d 303 (1983). Of course, our

---

[2] Yourren did not deliver the envelope and its contents directly to Dr. Koehn. Rather, she delivered it to Mrs. Koehn at the residence who in turn gave it to Dr. Koehn.

[3] Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §741.803, insofar as it permits the appointing authority to suspend a regular employee without pay for good cause.

[4] 71 P.S. §741.807.

scope of review, where the party with the burden of proof has prevailed below, is to determine whether the appellant's constitutional rights were violated, an error of law committed or a necessary finding is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Mufson v. Pennsylvania Department of Public Welfare, Philadelphia State Hospital,* 72 Pa. Commonwealth Ct. 404, 456 A.2d 736 (1983); *Magnelli v. Pennsylvania Liquor Control Board,* 47 Pa. Commonwealth Ct. 597, 408 A.2d 904 (1979), *cert. denied,* 449 U.S. 993 (1980).

Murphy contends that the Commission erred when it received into evidence his alleged admission without first establishing a corpus delecti—here the elements of the alleged bribe. Murphy cites our Supreme Court's opinion in *Commonwealth v. Palmer,* 448 Pa. 282, 292 A.2d 921 (1972) for the proposition that in Pennsylvania extra-judicial admissions or confessions of the accused are sufficient to convict only if the corpus delecti has been established by independent proof before the extra-judicial statement of the accused is received into evidence. An important part of White Haven's case was the testimony of Agent Russell Thomas who testified that Murphy admitted to him during an interview that the charges were true.

Murphy concedes, as he must, that the above proposition has been applied only to criminal trials. *See generally* Wigmore, Evidence §2072 (Chadbourn rev. 1978). Notwithstanding that traditional limitation, he urges this Court to extend the proposition to civil administrative proceedings and further hold that the Commission erred in admitting Agent Thomas' testimony regarding his alleged confession. We decline to do so. Section 505 of the Administrative Agency Law, 2 Pa. C. S. §505, specifies that agencies are not bound by technical rules of evidence at agency hearings. If evidence is relevant to the issues before

the agency and of reasonable probative value, the agency may receive it under Section 505. .Admissions against interest made by a party have long been held to be admissible in civil proceedings as a recognized exception to the hearsay rule. *See Geiger v. Schneyer,* 398 Pa. 69, 157 A.2d 56 (1959); *Gougher v. Hansler,* 388 Pa. 160, 130 A.2d 150 (1957); *Unemployment Compensation Board of Review v. Houp,* 20 Pa. Commonwealth Ct. 111, 340 A.2d 588 (1975).[5] We therefore find the Commission did not err by admitting Murphy's alleged admission when it did.

Murphy next contends the Commission erred in admitting into evidence a letter dated August 21, 1978 written to a third party by White Haven's former superintendent. The letter was written in response to an inquiry about Murphy's promotional outlook at White Haven and offered by White Haven to show Murphy was interested in a promotion, not career counseling, when he gave $500 to Dr. Koehn. Murphy argues that this letter is irrelevant to the events of September 1981 and unduly prejudicial. Evidence is relevant if it tends to establish facts in issue. *LeRoi v. State Civil Service Commission,* 34 Pa. Commonwealth Ct. 190, 382 A.2d 1260 (1978). Here, one of the disputed facts was whether Murphy was seeking a promotion or, as he claims, educational and career counseling, when he offered the $500 to Dr. Koehn. The letter does not indicate that the 1978 inquiry was prompted by Murphy or that Murphy was even aware of the letter's existence. We agree with Murphy that the letter of August 21, 1978 is too remote in time and its connection with the events of September 1981 too tenuous to be relevant in the matter before the Commission. This conclusion, however, does not require

---

[5] The Federal Rules of Evidence expressly exclude admissions made by a party from the definition of hearsay. Fed. R. Evid. 801 (d).(2).

reversal. A review of the Commission's adjudication reveals that the Commission did not consider the letter when rendering its decision. The Commission Chairman also stated he believed the letter was too remote in time to assist White Haven's case. As there was no prejudice to Murphy from the admission of this letter, the error was harmless. *See Goldberg v. Philadelphia Rapid Transit Co.,* 299 Pa. 79, 149 A. 104 (1930).

We next turn to Murphy's contention that Findings of Fact Numbers 8 and 10 are not supported by substantial evidence.[6] "Substantial evidence" has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *E.g., Consolidated Edison Co. v. NLRB,* 305 U.S. 197 (1938). It requires more than a mere scintilla of evidence or suspicion of the existence of a fact to be established. *Norfolk & Western Railway Co. v. Pennsylvania Public Utility Commission,* 489 Pa. 109, 413 A.2d 1037 (1980) ; *Barnes v. Pennsylvania Department of Justice,* 70 Pa. Commonwealth Ct. 47, 452 A.2d 593 (1982). Our review of the record convinces us that there is substantial evidence to support the Commission's findings of fact. As to Finding of Fact Number 8, Murphy admits having an "open application" for the numerous positions which were open at White Haven. The Personnel Analyst testified that Murphy was indeed a candidate for that particular position. As to Finding of Fact Number 10, the testimony of

[6] Findings of Fact Numbers 8 and 10 read as follows:

8. On or about September 10, 1981, appellant was a candidate for the fifth position, one in the Medical Assistance Compliance Officer classification.

. . .

10. The purpose of the $500.00 and the note was not to thank the Director of the White Haven Center for his consideration and assistance in helping appellant "forward" himself in his field.

Agent Thomas as well as the documentary evidence submitted by stipulation provide substantial evidence to support the finding. The existence of conflicting testimony does not mean there is a lack of substantial evidence to support the finding. *Lewis v. Pennsylvania Department of Health,* 63 Pa. Commonwealth Ct. 148, 151 n. 5, 437 A.2d 811, 813 n. 5 (1981), *appeal after remand,* 70 Pa. Commonwealth Ct. 531, 453 A.2d 713 (1982).

Murphy further contends that the Commission abused its discretion when it failed to find his testimony credible. The weighing of evidence and the evaluation of witness credibility are properly functions of the Commission. It is not the function of a reviewing court to judge the weight of evidence and credibility of witnesses on an appeal from an administrative agency. *Kundrat v. Pennsylvania State Dental Council and Examining Board,* 67 Pa. Commonwealth Ct. 341, 447 A.2d 355 (1982). Viewing the record as a whole, we cannot say that the Commission abused its discretion when it did not give Murphy's testimony greater weight.

Murphy's final assertion is that the Commission erred when it failed to draw an inference, from White Haven's failure to call Dr. Koehn as a witness, that Dr. Koehn's testimony would have been unfavorable to White Haven. A review of the record convinces us that this case does not fall under *General Electric Credit Corp. v. Aetna Casualty and Surety Co.,* 437 Pa. 463, 263 A.2d 448 (1970), which states that a fact finder may draw an inference from a party's failure to call a particular witness that the testimony would have been unfavorable to that party. This proposition requires that the witness be available, possess special knowledge or information relevant to the case, the testimony would not merely be cumulative, and whose relationship to the party is such that the testimony

would ordinarily be expected to favor the party.[7] While Dr. Koehn was not presented as a witness, there is nothing in the record to indicate that he possessed any special information about the case. To the contrary, the only facts about which Dr. Koehn could testify would be the circumstances of his involvement with the Attorney General's investigation. That involvement was adequately covered by the submission of the transcripts of the wiretap on Dr. Koehn's telephone and the body recorder and transmitter on Dr. Koehn. These transcripts were introduced by Murphy's counsel over the objection of White Haven. As Dr. Koehn appears to have possessed no additional special information, his testimony would have been merely cumulative to the transcripts. Accordingly, we find White Haven's failure to call Dr. Koehn as a witness does not fall within the confines of *General Electric Credit Corp.* and no inference of any kind was required to be drawn by the Commission.

Having found any errors committed by the Commission to be harmless and the findings supported by substantial evidence, we must affirm the adjudication of the Commission.

## ORDER

AND Now, the 30th day of August, 1984, the order of the State Civil Service Commission at Appeal No. 3797, dated February 3, 1983, dismissing the appeal of Arthur D. Murphy and sustaining the action of the White Haven Center, Department of Public Welfare, in suspending and removing Arthur D. Murphy from the position of Mental Retardation Aide II, regular status, is hereby affirmed.

---

[7] We stress this rule only states that an inference may be drawn from a party's failure to produce a particular witness. The rule does not call for the creation of a presumption which shifts a burden of proof.